**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
Ines Diaz Villafana (State Bar No. 354099)
Joshua B. Glatt (State Bar No. 354064)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
        dguerra@bursor.com
        idiaz@bursor.com
        jglatt@bursor.com
        jwilner@bursor.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEO LABRUSCIANO-CARRIS, on behalf of himself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| HP HOOD LLC, | <u>JURY TRIAL DEMANDED</u> |
| Defendant. | |

Plaintiff Theo LaBrusciano-Carris ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following on information and belief, by and through the investigation of undersigned counsel, except that Plaintiff's allegations as to facts pertaining to himself are based on personal knowledge:

## NATURE OF THE ACTION

1.      This is a class action lawsuit arising from Defendant HP Hood LLC d/b/a Planet Oat ("Planet Oat" or "Defendant") manufacturing, distribution, and sale of its Planet Oat Original oat milk (the "Product")[1].

2.      "Vitamin D is essential for human health."[2]  Among other benefits, vitamin D supports calcium absorption, bone health, muscle function, and immune health.  Unfortunately, many people have insufficient levels of vitamin D.  As a result, where permitted by the U.S. Food and Drug Administration ("FDA"), many manufacturers fortify their products with vitamin D to both increase the products' nutritional benefits and help ensure more people consume these essential nutrients.

3.      Defendant is one such manufacturer.  Defendant claims to sell oat milk products that purport to offer consumers 4 micrograms ("mcg") of vitamin D per 240 mL serving (one cup, a "Serving") or 20% of a consumer's daily value ("DV").

4.      However, independent testing conducted by an ISO/IEC 17025:2017 accredited and FDA recognized laboratory found that, contrary to Defendant's 4 mcg of vitamin D per Serving representation (the "Vitamin D Representation"), the Products contain zero micrograms of vitamin D per Serving; ***100% less*** vitamin D than is represented on the Products' label.

5.      Accordingly, Plaintiff brings claims on behalf of himself and proposed classes for violations of (i) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.;* (ii)

---

[1] Discovery may demonstrate the need to adjust the scope of the Products.  Accordingly, Plaintiff reserves the right to amend his complaint to include additional substantially similar Products should litigation prove necessary.

[2] *Food Additives Permitted for Direct Addition to Food for Human Consumption; Vitamin D3,* FOOD AND DRUG ADMINISTRATION, FEDERAL REGISTER, Vol. 68, No. 39 (February 27, 2003), https://www.govinfo.gov/content/pkg/FR-2003-02-27/pdf/03-4604.pdf at 9001.

1　California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.; (iii) California's

2　False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.; (iv) Breach of Express Warranty;

3　and (v) Unjust Enrichment.

**PARTIES**

5　　　　6.　　　Plaintiff Theo LaBrusciano-Carris ("Plaintiff") is a California citizen residing in San

6　Francisco, California.  Plaintiff consistently purchased Defendant's Product from Safeway online

7　from his home in San Francisco as recently in September 2025.  When purchasing the Product,

8　Plaintiff reviewed the nutrition label on the Products' packaging, including the Vitamin D

9　Representation.  Plaintiff reasonably understood Defendant's Vitamin D Representation to mean

10　that the Products contained 4 mcg of vitamin D per Serving.  Plaintiff relied on this representation

11　and warranty in deciding to purchase the Product.  These representations and warranties were part

12　of the basis of the bargain in that he would not have purchased Defendant's Product or would have

13　paid less for it had he known that the vitamin D content in the Products was less than Defendant

14　represented.  Accordingly, Plaintiff was injured and lost money because of Defendant's deceptive

15　and unfair conduct.

16　　　　7.　　　Plaintiff remains interested in purchasing Defendant's Products in the future.

17　However, unless and until he can determine if the Product is accurately labeled, he will be unable

18　to rely on the truth of Defendant's labeling.  So long as Defendant's Products are labeled as

19　containing 4 mcg of vitamin D per Serving—when they actually contain no vitamin D—Plaintiff

20　will be unable to make informed decisions about whether to purchase the Products in the future and

21　will be unable to evaluate the different prices between Defendant's Products and competitors'

22　products.  Plaintiff will likewise be unable to rely on Defendant's marketing and representations

23　going forward.  Moreover, he is likely to be repeatedly misled by Defendant's conduct, unless and

24　until Defendant is compelled to ensure that its marketing is accurate, non-misleading, and that its

25　Products actually contain the amount of vitamin D per Serving that they purport to contain.

26　　　　8.　　　Defendant HP Hood LLC d/b/a Planet Oat ("Planet Oat" or "Defendant") is a

27　Delaware corporation with its principal place of business in Lynnfield, Massachusetts.  Defendant

28

produces, markets, manufactures, and sells its Products under the Planet Oat brand throughout California and the United States, online and in brick-and-mortar stores.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

10.      This Court has specific personal jurisdiction over Defendant because Defendant sold the Products to consumers in California, including to Plaintiff in California.  Defendant derives substantial revenue from the sale of its Products in California and purposefully avails itself of the benefits of conducting business in California, with knowledge that its Products are being marketed and sold for use here.

11.      Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims took place in this District.  Specifically, Plaintiff purchased the Product in this District.

## FACTUAL ALLEGATIONS

### I.      BACKGROUND ON VITAMIN D

12.      Vitamin D is a nutrient essential for human health.  Among other benefits, vitamin D helps the body absorb calcium, promotes bone mineralization and growth, reduces inflammation, and promotes immune function.[3]  Vitamin D is also essential to promoting muscle development

---

[3] NATIONAL INSTITUTE OF HEALTH, OFF. OF DIETARY SUPPLEMENTS, *Vitamin D fact sheet*, U.S. DEP'T. OF HEALTH AND HUM. SERVS. (July 24, 2024), *available at* https://ods.od.nih.gov/factsheets/VitaminD-HealthProfessional/.

and functions.  Studies have shown a link between vitamin D deficiency and muscle weakness, pain, and atrophy.[4]

13.    Given vitamin D's critical role in human health, and bone development and growth specifically, vitamin D intake is crucial at all stages of life.[5]

14.    Indeed, the National Institute of Health has developed recommended daily consumption amounts for Americans at all stages of life:[6]

| Life Stage | Recommended Amount |
|---|---|
| Birth to 12 months | 10 mcg (400 IU) |
| Children 1–13 years | 15 mcg (600 IU) |
| Teens 14–18 years | 15 mcg (600 IU) |
| Adults 19–70 years | 15 mcg (600 IU) |
| Adults 71 years and older | 20 mcg (800 IU) |
| Pregnant and breastfeeding teens and women | 15 mcg (600 IU) |

15.    Vitamin D can come from a few sources, including: sun exposure, foods that have natural sources of vitamin D like fatty fish and egg yolks, and supplements.[7]  But, "[d]ue to the limited natural food sources of vitamin D, many products, including … dairy items[] and plant-based milks, are fortified with vitamin D2 and D3."[8]  These foods, commonly referred to as

---

[4] Christian M. Girgis & Tara C. Brennan-Speranza, *Vitamin D and Skeletal Muscle: Current Concepts From Preclinical Studies*, AMER. JBMR PLUS, Vol. 5, No. 12 (Oct. 24, 2021), 1-7, at 1, *available at* https://pubmed.ncbi.nlm.nih.gov/34950830/.

[5] PEDIMED CENTER, *Your Child and the Importance of Vitamin D*, *available at* https://www.pedimedcenter.com/blog/306690-your-child-and-the-importance-of-vitamin-d#:~:text=Vitamin%20D%20deficiency%20is%20incredibly,their%20vitamin%20D%20from%20sunlight.

[6] NAT'L INST. OF HEALTH, OFF. OF DIETARY SUPPLEMENTS, *Vitamin D*, U.S. Dep't. of Health and Hum. Servs. (Nov. 8, 2022), *available at* https://ods.od.nih.gov/factsheets/VitaminD-Consumer/.

[7] *Id.*

[8] Maya Shetty, *Vitamin D: Benefits, Sources, Deficiency*, STANFORD UNIVERSITY LIFESTYLE MEDICINE (Mar. 11, 2024), *available at* https://longevity.stanford.edu/lifestyle/2024/03/11/vitamin-d-benefits-sources-deficiency/.

---

fortified foods, "provide most of the vitamin D in American diets."[9]  Accordingly, nearly all of the

milk produced in the U.S. is fortified with at least 3 mcg of vitamin D per cup.[10]

## II.  DEFENDANT'S PRODUCTS MISTATE THE AMOUNT OF VITAMIN D

16.    Defendant's Products prominently claim to include "Vitamin D" on the Product's

packaging.




*Figure 1*

[9] NAT'L INST. OF HEALTH, OFF. OF DIETARY SUPPLEMENTS, *Vitamin D Fact Sheet for Health professionals*, *available at* https://ods.od.nih.gov/factsheets/VitaminD-HealthProfessional/.
[10] *Id.*

1

2

17.     On the nutrition panel, Defendant specifies that "Vitamin D" means the Products contain 4 mcg of vitamin D per Serving.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18



***Figure 2***

19

20

21

22

18.     However, in May 2025, independent testing commissioned by Plaintiff's Counsel to test the vitamin D content of a randomly selected 52 fluid ounce version of Defendant's Product found that no vitamin D was detected in the Products, meaning that the Products contained zero vitamin D.

23

19.     The testing was conducted by an ISO/IEC 17025 accredited laboratory.[11]  The

24

25

26

27

28

---

[11] *See* INTERNATIONAL STANDARD OF ORGANIZATION, *available at* https://www.iso.org/standard/66912.html#:~:text=Why%20is%20ISO/IEC%2017025,technical%2 0proficiency%2C%20and%20scientific%20rigor ("ISO/IEC 17025 is the international standard for testing and calibration laboratories.  It sets out the requirements for competence, impartiality, and consistent operation of laboratories, ensuring the accuracy and reliability of their testing and calibration results.").

testing was conducted using the AOAC 2012.11 method, developed for testing vitamins D2 and D3 in dairy products, among others.

### III.    DEFENDANT'S OAT MILK PRODUCTS ARE SUBSTANTIALLY SIMILAR TO THE VERSION PLAINTIFF PURCHASED AND THE LAB TESTED

20.    The test results of the 52 fluid ounce "Original" variety is substantially similar to Defendant's over versions of its Vitamin D oat milk.

21.    Defendant sells six varieties of its Vitamin D oat milk: (1) Extra Creamy, (2) Vanilla, (3) Dark Chocolate, (4) Unsweetened Original, (5) Extra Cream Unsweetened Original, and (6) Unsweetened Vanilla.

22.    As an initial matter, Defendant's "Original" Product comes in two sizes: 52 fluid ounces or 85 fluid ounces.  Both are sold in nearly identical packaging, featuring prominent claims that the Products contain vitamin D.



*Figure 3*                    *Figure 4*

23.    Significantly, both claim to contain vitamin D on the front label and claim to

contain 4 mcg of vitamin D on the nutrition label, thus making the Vitamin D Representation on the packaging identical across the Products.

24.     The additional six Products are likewise substantially similar to the "Original" version Plaintiff purchased.

25.     Each is marketed and sold with the same eye-catching and visually distinct trade dress, varying only in flavoring and a color matching that inconsequential flavor difference[12]:




---

[12] Plaintiff's substantial similarity allegations are inclusive of each version's 86-ounce alternative.

26.     Each is packaged and sold by Defendant under similar supervisory and production conditions.  Each claims to be made without dairy, gluten, soy, and peanuts on the top label.  Each claims to be "an excellent source of calcium & vitamins A & D."

27.     Accordingly, each of Defendant's Products prominently representing that they contain "Vitamin D" are substantially like that which Plaintiff purchased.

## IV.     DEFENDANT'S PRODUCTS ARE MISBRANDED

28.     Defendant's Products are misbranded.  They fail to contain a vitamin D nutrient content equal to that stated on the label.

29.     The Food, Drug, and Cosmetic Act ("FDCA") defines two classes of nutrients: Class I and Class II nutrients.  *See* 21 C.F.R. § 101.9(g)(3).  Relevant here, Class I nutrients are "[a]dded nutrients in fortified or fabricated foods."  *Id.*  The vitamin D in the Products is considered a Class I nutrient because the Products are fortified with vitamin D.

30.     For a product containing Class I nutrients, "the nutrient content of the composite must be formulated to be at ***least equal to*** the value for that nutrient declared on the label."  21 C.F.R. § 101.9(g)(4)(i) (emphasis added).  A product failing to meet this requirement is considered misbranded.  21 C.F.R. § 101.9(g)(4).

31.     Thus, Defendant's Products are misbranded under the FDCA because they do not contain the amount of vitamin D Defendant represents on the label.

32.     A product that is "misbranded" cannot legally be manufactured, advertised, distributed, or sold.  21 U.S.C. § 331(a).

33.     California's Sherman Law expressly incorporates all drug labeling requirements set forth in the FDCA.  *See* Cal. Health & Safety Code § 110100(a).  The Sherman Law provides that any food is misbranded if it does not conform to FDCA requirements.

34.     Each of Defendant's violations of federal law and regulations are also violations of California's Sherman Law, including, but not limited to, the following sections:

(a)     Section 110100 (adopting all U.S. Food and Drug Administration ("FDA") regulations as state regulations);

(b)     Section 110660 (false or misleading labeling);

(c)     Section 110665 (not conforming to nutrition labeling requirements);

(d)     Section 110690 (misleading container);

(e)     Section 110760 (manufacture, sale, delivery, holding or offer of misbranded food);

(f)     Section 110765 (misbranding food);

(g)     Section 110770 (reception or delivery of misbranded food).

35.     Thus, the underfill of vitamin D in the Products renders the Products misbranded and therefore illegal and unfit for sale in trade or commerce.

## V.     DEFENDANT'S MISREPRESENTATIONS AND OMISSIONS INJURED PLAINTIFF AND CLASS MEMBERS

36.     Defendant expressly and affirmatively represents on the Products' labels that they contain 4 mcg of vitamin D per Serving.  However, because the Products do not contain the specified quantity of vitamin D, Defendant's representations are false and misleading.

37.     The amount of vitamin D in the Products is material to Plaintiff and similarly situated consumers given the importance of consuming recommended amounts of vitamin D. Consumers further understand that fortified oat milk is a good source of vitamin D.  If Plaintiff and putative class members knew that the Products did not contain 4 mcg of vitamin D per Serving, Plaintiff and Class members would not have purchased the Products, or they would have paid less for the Products than they did.

38.     Defendant's uniform marketing of its Products tracks with reasonable consumers' expectations of the vitamin D benefits of fortified oat milk.

39.     A 2007 consumer study found that "85 percent of respondents say that health and nutrition is 'very/somewhat important' when choosing food and beverages [and] [a]bout two-thirds

---

of the respondents say they are 'very likely/somewhat likely' to buy products that communicate health benefits on the package[.]"[13]

40.     It is estimated that the global oat milk market size will be worth 6.09 billion dollars by 2032.[14]  In a 2025 online survey of over 400 participants, consumers identified that the ideal oat milk was "original flavor with claims of excellent source of calcium, vitamins A & D, and free from artificial flavors and colors."[15]

41.     Given its own labels' emphasis on the existence of "Vitamin D" in its Products, Defendant is aware that Plaintiff and similarly situated health-conscious consumers are seeking "vitamin D"-branded products like Defendant's.   Defendant's Products' labels to try to capture those consumers with its misbranded Vitamin D Representation.

42.     Unfortunately, consumers lack the ability to test or independently ascertain or verify whether the Products truly contain the levels of vitamin D Defendant claims.  Thus, consumers must rely on Defendant to truthfully and honestly report the vitamin D content of the Products on the Products' packaging.

43.     Consumers looking at the Products' packaging, reasonably understand Defendant's vitamin D representations to mean exactly what it claims, not that it has no vitamin D at all.

---

[13] Judith Jarvis, *Communicating Dairy's Nutrient Power to Consumers*, DAIRY FOODS (Jan. 22, 2009), https://www.dairyfoods.com/articles/84357-communicating-dairy-s-nutrient-power-to-consumers#:~:text=In%20addition%2C%20consumers%20believe%20milk,reduce%20the%20risk%20of%20osteoporosis.&text=The%20majority%20of%20consumers%20(74,desire%20for%20naturally%20healthy%20products.&text=Calling%20attention%20to%20the%20inherent,competitive%20superiority%20in%20the%20marketplace.

[14] "[Latest] Global Oat Milk Market Size/Share Worth USD 6.09 Billion by 2032 at a 15.2% CAGR: Custom Market Insights (Analysis, Outlook, Leaders, Report, Trends, Forecast, Segmentation, Growth, Growth Rate, Value)." YAHOO! FINANCE  (February 29, 2024), *available* https://finance.yahoo.com/news/latest-global-oat-milk-market-053000213.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAAKIvVgb07z7rGW_IfiXrnCv4P9CLuIz65xZhXn13Gu-mn0dY94WiTll3obyKPQ0VzSdyGG7e-aEGjqbHuWAAnAPUM1HryMGCdOmLww_samDZcfwj6NcZroUilRxOOBGOM5qjSf-bM1kKOggICdF8GEcym5JSnpiRAAgkKIX4OAlR.

[15] Rovai, Dominic, et al., *Extrinsic Attributes that Drive Oat Milk Purchase*, J. OF FOOD SCI.  (June 12, 2025). Accessed at: https://doi.org/10.1111/1750-3841.70329.

1

**FED. R . CIV. P. 9(b) ALLEGATIONS**

2      44.      Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud

3  or mistake, a party must state with particularity the circumstances constituting fraud or mistake.

4  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

5  Though Defendant is best situated to know the composition of its Products, to the extent necessary,

6  as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b)

7  by establishing the following elements with sufficient particularity.

8      45.      **WHO:** Defendant HP Hood LLC.

9      46.      **WHAT:** Defendant's conduct was, and continues to be, deceptive because it

10  deceived consumers into believing that the Products have 4 mcg of vitamin D per Serving even

11  though testing of one of the Products—produced under similar circumstances to Defendant's other

12  "Vitamin D"-branded oat milk—found it contained zero vitamin D.  Even though Defendant was in

13  control of, aware of, or should have been aware of, the amount of vitamin D it added to its

14  Products, Defendant failed to accurately fill the Products with the correct amount of vitamin D as

15  listed on the nutritional label and failed to accurately state the amount of vitamin D in the Products.

16  Defendant knew, or should have known, this information is material to reasonable consumers.  Yet,

17  Defendant misrepresented on the labeling and advertising of its Products that they contain more

18  vitamin D than they do.  Defendant failed to ensure the Products in fact contain the amount of

19  vitamin D represented on the packaging.  Defendant knew or should have known that the Products

20  contained less vitamin D than advertised because Defendant is the manufacturer of the Products

21  and has quality control testing protocols set in place that should have identified the underfill of

22  vitamin D in the Products.

23      47.      **WHEN:** Defendant engaged in this deceptive conduct continuously throughout the

24  applicable statutory period, including at the point of sale, by printing the false and misleading

25  Vitamin D Representation directly on its Products' packaging.

26      48.      **WHERE:** Defendant's misrepresentations were made through its Products' label

27  and were thus viewed by every purchaser, including Plaintiff, at the point of sale in every

28

transaction.  The Products are sold nationwide in brick-and-mortar stores and online.  Defendant's

underfill of the vitamin D content occurred in Defendant's manufacturing facilities.

49.     **HOW IT IS FALSE:** Defendant misrepresented on the Products' label that they

contain 4 mcg of vitamin D per Serving when they do not.  And as discussed in detail throughout

the Complaint, Plaintiff and consumers (including members of the putative classes) read and relied

on Defendant's misrepresentations before purchasing the Products.

50.     **WHY:** Defendant misrepresented and underfilled the amount of vitamin D in the

Products.  This representation was material in that it induced consumers like Plaintiff to purchase

the Products for their purported nutritional benefit while charging consumers a price premium.

Further, due to the representations and the Products being underfilled, Plaintiff and members of the

putative classes would not have purchased the Products or would have paid less for them had they

known the truth about the vitamin D content.  As such, Defendant unlawfully profited by selling

the Products to thousands of consumers throughout the nation, including Plaintiff and the members

of the putative classes.

51.     **INJURY:** Plaintiff and Class Members were injured by Defendant's conduct in that

they would not have purchased Defendant's Products or would not have purchased them on the

same terms, had they known the Products contain less vitamin D than Defendant expressly

represents on the packaging.

<u>**CLASS ACTION ALLEGATIONS**</u>

52.     Plaintiff seeks to represent a class defined as:

> All persons in the United States who purchased the Product and all substantially similar Products for personal or household use during the applicable statute of limitations period (the "**Nationwide Class**").

53.     Plaintiff also seeks to represent a Subclass defined as:

> All persons in the State of California who purchased the Product and all substantially similar Products for personal or household use during the applicable statute of limitations period (the "**California Subclass**").

54.     Unless otherwise specified, the Nationwide Class and California Subclass shall

collectively be referred to as the "Classes."

55.     Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, any Judge and/or Magistrate Judge to whom this action is assigned, and any member of such Judges' staff and immediate families, Defendant's Counsel, and Plaintiff's Counsel.

56.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be modified, expanded, or narrowed by amendment to the Complaint or at class certification.

57.     **Numerosity.** The members of the Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates there are hundreds of thousands of members in the Classes.  Plaintiff does not know the exact number of members in the proposed Classes, but reasonably believes, based on the scale of Defendant's business, that the Classes are so numerous that individual joinder would be impracticable.

58.     **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes.   These common legal and factual questions include, but are not limited to, the following:

(a)     Whether the Products contained the stated amounts of vitamin D;

(b)     Whether Defendant knew or should have known the Products contained less vitamin D than advertised;

(c)     Whether Defendant was unjustly enriched;

(d)     Whether the underfill of vitamin D renders the Products misbranded and illegal to sell;

(e)     Whether Defendant violated the state consumer protection statutes alleged herein;

(f)     Whether Plaintiff and the Classes have sustained monetary loss and the proper measure of that loss;

(g)    Whether a reasonable consumer would consider the amount of vitamin D in the Products to be material;

(h)    Whether Plaintiff and the Classes are entitled to restitution and disgorgement from Defendant; and

(i)    Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive.

59.    **Typicality.** Plaintiff's claims are typical of the claims of the Members of the Classes in that the representative Plaintiff, like all members of the Classes, purchased the Product which had less vitamin D than represented. The representative Plaintiff, like all members of the Classes, has been damaged by Defendant's misconduct in the very same way as the members of the Classes. Further, the factual bases of Defendant's misconduct are common to all members of the Classes and represent a common thread of misconduct resulting in injury to all members of the Classes.

60.    **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained counsel who are highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that are antagonistic to those of the Classes.

61.    **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by members of the Classes are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if members of the Classes could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and

1  presents no unusual management difficulties under the circumstances.

2  **CAUSES OF ACTION**

3  **COUNT I**
   **Violation Of California's Consumers Legal Remedies Act ("CLRA")**
4  **California Civil Code § 1750, *et seq.***
   **(On Behalf of Plaintiff and the California Subclass)**
5

6  62.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged

7  above.

8  63.    Plaintiff brings this claim individually and on behalf of the members of the

9  California Subclass against Defendant.

10  64.    Defendant violated Civil Code § 1770(a)(5) of the CLRA in that Defendant's acts

11  and practices constitute material representations that the Products have characteristics, uses, and/or

12  benefits which they do not.

13  65.    Defendant violated Civil Code § 1770(a)(7) of the CLRA in that Defendant's acts

14  and practices constitute material representations that the Products are of a particular quality, when

15  they are not.

16  66.    Defendant violated Civil Code § 1770(a)(9) of the CLRA in that Defendant's acts

17  and practices constitute the advertisement of goods in question without the intent to sell them as

18  advertised.

19  67.    Defendant misrepresented the vitamin D content in the Products.  Specifically,

20  Defendant stated that the Products contain 4 mcg of vitamin D per Serving.  However, testing of

21  the Products revealed a Serving contained no vitamin D.  Defendant knew this representation was

22  material to reasonable consumers given the importance of vitamin D to human health and that oat

23  milk is a common food consumers purchase to incorporate vitamin D into their diet.  Nevertheless,

24  Defendant made the Vitamin D Representation despite underfilling the Products' vitamin D

25  content.

26  68.    Plaintiff and the California Subclass Members suffered harm because of these

27  violations of the CLRA because they have incurred charges and/or paid monies for the Products

28

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                              16

that they otherwise would not have incurred or paid had they known the truth about the Products'

vitamin D content.

69.    Prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a CLRA

notice letter, which complied in all respects with California Civil Code § 1782(a).  The letter was

sent via certified mail, return receipt requested, advising Defendant that it was in violation of the

CLRA and demanding that they cease and desist from such violations and make full restitution by

refunding the monies received therefrom.  The letter stated that it was sent on behalf of all other

similarly situated purchasers.

70.    Defendant failed to remedy the issues raised in the notice letter.  Accordingly,

Plaintiff seeks damages from Defendant for their violations of the CLRA.

71.    Accordingly, Plaintiff and members of the California Subclass seek (1) actual and

punitive damages, (2) restitution, (3) reasonable costs and attorneys' fees, and (4) to enjoin the

unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

<u>COUNT II</u>
**Violation Of California's Unfair Competition Law,
California Business & Professions Code §§ 17200, *et seq.*
(On Behalf of Plaintiff and the California Subclass)**

72.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged

above.

73.    Plaintiff brings this claim individually and on behalf of the members of the

proposed California Subclass against Defendant.

74.    By committing the acts and practices alleged herein, Defendant violated California's

Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* as to Plaintiff and the

Class, by engaging in unlawful, fraudulent, and unfair conduct.

75.    Defendant violated the UCL's proscription against engaging in **unlawful business**

**practices** as a result of its violations of (1) CLRA, Cal. Civil Code §§ 1770(a)(5), (a)(7), and

(a)(9); (2) California's Sherman Law; and (3) California's False Advertising Law, Cal. Bus. &

Prof. Code § 17500, *et seq.*

1     76.    Defendant's acts, omissions, and practices concerning the Products constitute

2  "unlawful" business acts and practices in that they violate the CLRA, FDCA and, by extension,

3  California's Sherman Law, and implementing regulations including, at least, the following

4  sections:

  (a) Section 110100 (adopting all FDA regulations as state
    regulations);

  (b) Section 110660 (false or misleading labeling);

  (c) Section 110665 (not conforming to nutrition labeling
    requirements);

  (d) Section 110690 (misleading container);

  (e) Section 110760 (manufacture, sale, delivery, holding or
    offer of misbranded food);

  (f) Section 110765 (misbranding food);

  (g) Section 110770 (reception or delivery of misbranded food).

 77.    Defendant's acts and practices described above violate the UCL's proscription

against engaging in **fraudulent business practices** by misrepresenting and overstating the true

vitamin D content of the Products despite having superior knowledge of—and total control over—

the amount of vitamin D added to the Products.  Testing of one of Defendant's oat milk Products

showed the Products actually contained no vitamin D per Serving—a 100% underfill.

 78.    Defendant's acts and practices described above also violate the UCL's proscription

against engaging in **unfair business practices.**  Defendant manufactured Products with an

underfilled vitamin D content.  Defendant then sold these Products at full price even though the

Products were underfilled.  Defendants' conduct is thus substantially injurious to consumers,

offends public policy, and is immoral, unethical, oppressive and unscrupulous as the gravity of the

conduct outweighs any alleged benefits.

 79.    Plaintiff and the California Subclass members suffered a substantial injury by virtue

of buying the Products in that they would not have purchased the Products absent Defendant's

unlawful, fraudulent, and unfair marketing, advertising, packaging, and misrepresentation about the

vitamin D content of its Products, or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Products.

80.    Plaintiff and the California Subclass members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled. Plaintiff and the California Subclass members are not able to test for the amount of vitamin D in the Products. Thus, Plaintiff and the California Subclass members could not have reasonably avoided the injury each of them suffered.

81.    Plaintiff and the California Subclass lost money or property as a result of Defendant's UCL violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products had less vitamin D than advertised; and (b) the Products did not have the characteristics, ingredients, uses, or benefits as promised by Defendant.

82.    Pursuant to California Business and Professional Code § 17203, Plaintiff and the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution to Plaintiff and the California Subclass members; (b) disgorge all profits obtained as a result of its violations of the UCL; and (c) pay Plaintiff's and the Subclass' attorneys' fees and costs.

83.    To the extent Plaintiff does not have an adequate remedy at law, he pleads his claim under the UCL in the alternative to his legal claims. Legal remedies available to Plaintiff and Class Members are inadequate because they are not equally prompt and certain and in other ways as efficient as equitable relief. Damages are not as equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff failed to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Equitable relief, including restitution, entitles Plaintiff to recover all profits from the wrongdoing, which may exceed the available damages at law.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNT III**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

84.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

85.    Plaintiff brings this claim on behalf of himself and the California Subclass against Defendant.

86.    Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive members of the California Subclass and the public.  As described throughout this Complaint, Defendant misrepresents the true vitamin D composition of its Products.

87.    By Defendant's actions, they have disseminated uniform advertising regarding the Products across California and the U.S.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq.*  Such advertisements were intended to, and likely did, deceive the consuming public.

88.    The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant affirmatively represents that the Products contained 4 mcg of vitamin D per Serving when independent testing revealed that a sampling of Defendant's Products contained significantly less.

89.    In making and disseminating these statements, Defendant knew, or should have known, that its advertising was untrue and misleading in violation of California law.  Plaintiff and the members of the California Subclass based their purchasing decisions on Defendant's materially false and misleading representations and warranties about the composition of its Products.  Plaintiff and the California Subclass were injured in fact and lost money and property as a result, in an amount to be proven at trial.

90.    The misrepresentations by Defendant of the material facts described and detailed above herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq.*

91.     Accordingly, Plaintiff and the California Subclass seek all monetary and non-monetary relief allowed by law, including (a) restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; (b) declaratory relief; (c) reasonable attorneys' fees and costs under Cal. Code Civ. Proc. §1021.5; and (d) injunctive relief, and other appropriate equitable relief.

**COUNT IV**
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Classes)**

92.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

93.     Plaintiff brings this claim individually and on behalf of the Classes against Defendant.

94.     Plaintiff brings this claim under the laws of the State of California.

95.     Plaintiff and the members of the Classes formed a contract with Defendant at the time they purchased the Products.

96.     The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging that the Products included 4 mcg of vitamin D.

97.     This labeling and advertising constitute express warranties and became part of the basis of the bargain and part of the standardized contract between Plaintiff, members of the Classes, and Defendant.

98.     As set forth above, Defendant purports through its labeling, marketing, and packaging, to create an express warranty that its "Vitamin D"-branded Products contain 4 mcg of vitamin D per Serving.  However, Defendant breached its express warranties about the Products by including significantly less vitamin D than stated on the packaging.  Simply, the Products do not conform to Defendant's representations and warranties.

99.     Plaintiff and the members of the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

100.    Plaintiff and the members of the Classes would not have purchased the Products had

1    they known the true nature of the Products.

2        101.    As a result of Defendant's breach of express warranty, Plaintiff and members of the

3    Classes suffered financial damage and injury as a result and are entitled to damages, in addition to

4    costs, interest and fees, and attorneys' fees, as allowed by law.

5                                 **COUNT V**
                              **Unjust Enrichment**
6                    **(On Behalf of Plaintiff and the Classes)**

7        102.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged

8    above.

9        103.    Plaintiff brings this claim individually and on behalf of the members of the Classes

10   against Defendant.

11       104.    This claim is brought in the alternative to the extent permitted by Fed. R. Civ. P. 8.

12       105.    Plaintiff and the Classes conferred a benefit on Defendant in the form of monies

13   paid to purchase Defendant's Products.

14       106.    Defendant voluntarily accepted and retained this benefit.

15       107.    Because this benefit was obtained unlawfully, namely by selling and accepting

16   compensation for the Products which had less vitamin D than Defendant advertised, it would be

17   unjust and inequitable for the Defendant to retain monies received from its misbranded Products.

18       108.    Plaintiff and the members of the Classes do not have an adequate remedy at law and

19   plead their claim for unjust enrichment in the alternative to their legal claims.  Legal remedies

20   available to Plaintiff and the members of the Classes are inadequate because they are not equally

21   prompt and certain and in other ways as efficient as equitable relief.  Damages are not as equally

22   certain as restitution because the standard that governs restitution is different than the standard that

23   governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff failed

24   to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not

25   the same amount.  Equitable relief, including restitution, entitles Plaintiff to recover all profits from

26   the wrongdoing, which may exceed the available damages at law.

27

28

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

    (a)    For an order certifying the Nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative for the Classes, and naming Plaintiff's attorneys as Class Counsel;

    (b)    For an order declaring the Defendant's conduct violates the statutes referenced herein;

    (c)    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

    (d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

    (e)    For prejudgment interest on all amounts awarded;

    (f)    For an order of restitution and all other forms of equitable monetary relief; and

    (g)    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  November 7, 2025            Respectfully submitted,

                               **BURSOR & FISHER, P.A.**

                               By: */s/ L. Timothy Fisher*

                               L. Timothy Fisher (State Bar No. 191626)
                               Daniel S. Guerra (State Bar No. 267559)
                               Ines Diaz Villafana (State Bar No. 354099)
                               Joshua B. Glatt (State Bar No. 354064)
                               Joshua R. Wilner (State Bar No. 353949)
                               1990 North California Blvd., 9th Floor

Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
        dguerra@bursor.com
        idiaz@bursor.com
        jglatt@bursor.com
        jwilner@bursor.com

*Attorneys for Plaintiff*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Theo LaBrusciano-Carris who resides in San Francisco, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.  Additionally, Defendant transacts substantial business in this District, including sales of the Products at issue, and Defendant advertised and marketed the Products at issue to Plaintiff in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California on November 7, 2025.

_____*/s/ L. Timothy Fisher*_____
L. Timothy Fisher

CLRA VENUE DECLARATION